IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GREGORY YOUNG, | ) | |
| Petitioner, | ) | C05-0119 JSW (PR) |
| | ) | |
| v. | ) | ORDER DENYING PETITION |
| | ) | FOR A WRIT OF HABEAS |
| D.L. RUNNELS, Warden, | ) | CORPUS |
| Respondent. | ) | |
| | ) | |

**INTRODUCTION**

Gregory Young, a state prisoner currently incarcerated at Folsom State Prison in Folsom, California, filed this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, claiming ineffective assistance of counsel. This Court ordered Respondent to show cause why a writ of habeas corpus should not be granted. Respondent filed an answer. Petitioner has not filed a traverse. This *pro se* habeas petition is now before the Court for consideration of the claims on the merits. For the reasons discussed below, the petition is denied.

**PROCEDURAL BACKGROUND**

On January 16, 2001, following a jury trial, Petitioner was convicted of assault with a firearm, and of being a felon in possession of a firearm. In a bifurcated trial, the jury found that Petitioner had three prior serious felony convictions qualifying as strikes under California's three strikes law. Exh. 1 at 147-53. On October 1, 2002, the California Court of Appeal affirmed Petitioner's conviction for being a convicted felon in possession of a firearm and the findings

on his three prior strike convictions, but reversed his conviction for assault with a firearm.  Exh. 7.  On February 3, 2003, Petitioner was sentenced on the remaining felony conviction under the three strikes law to a prison term of 25 years to life. Exh. 3.

On October 6, 2003, Petitioner filed a state habeas petition in the California Supreme Court.  Exh. 9.  The petition was denied on June 30, 2004.  Exh. 10.  On January 7, 2005, Petitioner filed his first federal habeas petition.  That petition was dismissed with leave to amend, as was his first amended petition.  On February 7, 2007, this Court issued an order to show cause to Petitioner's second amended petition.  On November 20, 2007, this Court granted Respondent's motion to dismiss the second amended petition as wholly unexhausted, and granted Petitioner's motion to file a third amended petition.  On January 8, 2008, this Court ordered Respondent to show cause as to one claim raised in Petitioner's third amended petition, ineffective assistance of counsel.

## FACTUAL BACKGROUND

The California Court of Appeal summarized the facts underlying the case as follows:

**Prosecution Case**

Willie Reeves ("Reeves"), the victim, lived with his disabled mother, Mary Reeves, in an apartment located behind the house at 3301 Chestnut Street where appellant lived with his wife Diana Young and her two children. Reeves and appellant had been neighbors for about a year and had occasional disputes over the driveway that they shared. Reeves's mother was wheelchair bound, so he needed a clear lane along the driveway to wheel her to and from the apartment. Appellant would occasionally park his car in such a manner as to block the wheelchair access.

On August 3, 2000, Reeves's 60-year-old uncle Jimmy Watt, who was staying with him, came home and said he was having trouble with appellant about the parking situation. When Watt went back to his car to get something, Reeves went with him. Reeves walked up the driveway to a point near appellant's porch where he saw appellant and Diana. As Watt was walking back from his car,

2

Diana yelled insults at him, calling him an "old blackass gray motherfucker." Watt yelled back. Reeves intervened and told Diana and Watt not to be so disrespectful to each other. Watt continued walking back to the apartment. As Watt entered the apartment, Reeves turned to leave too. As Reeves was walking to his apartment, appellant began hurling insults, including calling him a "bitch" three times. By the third time, Reeves responded, saying "if he saw a bitch, come down the stairs and slap her," which he intended as a challenge to a fist fight. Appellant bolted off the porch and ran down the stairs. Reeves looked down to kick off his sandals, and when he looked up, appellant had pulled a gun. Reeves stopped moving. His left hand was in his pocket with his thumb on the outside, and his right hand by his side. Appellant then shot Reeves in the thigh. Reeves fell to the ground. Appellant looked at him for a second, then turned and left. Reeves called for help, and Diana came to his assistance.

Reeves is right-handed. He testified that he did not have a gun in his pocket and was not reaching for anything with his left hand when he was shot. He had an old rusty pocketknife with a broken blade in his left pocket, which could not be readily opened.

Oakland Police Officer Stan Mock, who responded to the scene shortly after the shooting, testified that he searched Watt as well as the victim's apartment and found no gun. An evidence technician for the Oakland Police Department testified that she removed the items from Reeves's pockets and found no gun.

Reeves recounted two prior run-ins with appellant over driveway access. His mother is a big person, and it was difficult to push the wheelchair over the ground next to the driveway when the driveway was blocked. Once, Reeves went to appellant's door to ask him to move his car, and appellant responded by telling Reeves he was going to get his gun. Reeves thought appellant was bluffing and waited a brief time before leaving. Appellant never appeared with a gun. Another time when the driveway was blocked, Reeves was pushing his mother's wheelchair past appellant and mumbling complaints about appellant's failure to move his car. Appellant said, "What the fuck you looking at?"

Reeves admitted on direct examination that he had had some problems with the law. He had stolen two burritos from a 7-Eleven store and had had physical arguments with his mother. Reeves had two misdemeanor convictions involving physical violence. One was for disciplining his daughter with a belt, and the other was for pushing his sister Deborah Jordan.

Defense counsel cross-examined Reeves about nine prior acts of violence. Reeves did not remember an incident on December 13, 1988, in which Elizabeth Quinn, with whom he was living, called the police because he had struck her on the head with his fists. He did not remember an incident in April 1989 in which he punched his

3

mother in the head three times, hit her with a brass ornament, and spit on her during an argument over the newspaper. Reeves had a vague memory of another incident with Elizabeth Quinn in July 1989 in which she called the police after he kicked her three or four times during an argument over the loss of either $9 or $90. Reeves recalled being arrested for hitting his sister in January 1991, but denied that he had hit her. He claimed no memory of an arrest for assaulting Quinn again in June 1991, or of threatening to kill her, or of telling the police he had assaulted her 15 times that day. Reeves did not recall attacking his mother, punching her, hitting her in the head, kicking her when she fell, and wrapping a phone cord around her neck in March 1994. He recalled his mother calling the police but denied attacking her. He testified that he only tried to block his mother when she tried to hit him. He pleaded guilty only because his mother lay on the floor and put a phone cord around her own neck. Reeves recalled an incident with his daughter in January 2000, but denied that he kicked her, threw a doll at her, and punched her in the arm. He pleaded guilty to corporal punishment for "two licks with a belt" on his daughter for another incident in February 2000. Reeves denied that he attacked his mother as well during that incident.

The prosecution presented testimony by two people who had grown up in the same East Oakland neighborhood as appellant and had been shot by appellant in separate incidents in 1979. Elmer Robinson testified that he went into a neighborhood bar on October 26, 1979, and saw appellant shooting pool. At some point, Robinson bet appellant $10 that he could not sink two balls in a row. Appellant made the first shot but missed the second shot. He paid Robinson and left. Robinson went outside to smoke. Appellant approached him, asked if he was still gambling, and shot him.

Michael May testified that on November 24, 1979, he and several others were hanging out on a street corner when someone shot May in the arm. May testified that he lied at the preliminary hearing on January 9, 1980, and blamed appellant to get him out of the way because they were both interested in the same girl. Appellant's cousin actually shot May. Out of the presence of the jury, May declined the court's offer to appoint counsel because of the possibility of a perjury charge.

Inspector Jack Huth, an investigator for the Alameda County District Attorney's Office, testified that he interviewed May on December 28, 2000, along with the prosecutor. At that time May told him that appellant had shot him in a dispute over appellant's girlfriend. May was upset at being taken from prison so abruptly and told them he would not be cooperative if called to testify.

**Defense Case**

Diana Young testified that Jimmy Watt banged on her door on the morning of August 3, 2000, and asked her to move her car so he could get his car out. Watt was mad and cursing, saying he was tired

of them always blocking the driveway. Watt honked his horn and revved his engine while appellant went to find his keys and move the car. Watt drove off and returned several hours later while appellant and Diana were hanging up laundry on the front porch. Diana heard Watt say, "What's up nigger?" Appellant replied, "Oh, you threatening me?" Diana went out, told appellant "don't even go there," and they both went back inside the house. Inside the house, appellant told Diana he thought Watt had a gun and asked if she had seen it.

Diana and appellant encountered Watt again when they went back outside. The three of them were trading insults again when Reeves walked up. Reeves asked Diana why she was being disrespectful to his uncle. While Reeves and Diana were having a calm conversation, appellant went back in the house. Appellant came out again, and Diana told him to go back in because Watt was just acting silly. Reeves suddenly began to taunt appellant and challenge him to a fight. Appellant asked Reeves if he wanted a fight, and Reeves said "bring it on." Diana saw Reeves gesture with his right hand and put it in his pocket. Appellant rushed down the stairs, and Diana heard a shot. She thought Reeves had shot appellant, but then she saw Reeves fall.

Appellant testified in his own defense that Watt had come to his door that morning demanding that appellant move his car. Appellant moved the car. He later saw Watt pull up in front of the house, open the console in the car, grab a pistol, and put it in his pocket. Watt came up the driveway, and they exchanged words. Watt went to the back, and appellant went in his house and told his wife about the gun. Sometime after that, his little girls ran and told him there was an argument outside with their mother. Appellant retrieved a loaded gun from the attic and put it in his pocket because he had seen Watt with one. Appellant had found the gun in his yard about a year before and had put it in his attic. Appellant went out and saw Diana and Watt arguing and Reeves approaching. Reeves and appellant then started calling each other names and Reeves challenged him to a fight. Appellant went down the stairs and turned toward Reeves. Reeves started coming at him and put his hand in his pocket. Appellant believed Reeves was reaching into his pocket to get a gun or weapon. Appellant could think of no other reason why Reeves would reach into his pocket after challenging him to a fight. Appellant drew his gun and shot at Reeve's hand. Appellant then backed off and fled because he was scared.

On cross-examination, appellant admitted he had four or five prior felony convictions. He also admitted that he was not supposed to have a gun. Appellant acknowledged telling the police that he sat down for a moment after retrieving the gun and asked himself whether it was worth it.

The defense called Manga Singh to testify. He ran the

5

7-Eleven store from which Reeves had stolen the burritos. Singh testified that Reeves refused to pay for the burritos and threatened to beat him up.

The defense also called Reeves's mother, Mary Reeves. She testified that she did not remember much about an incident in April 1989 because she had two strokes to the brain in 1989. She confirmed that it was her signature on a statement she gave to the police about an incident in March 1994. She denied telling the police that her son had a violent temper or that he ever hit her with his fist or kicked her. She admitted that Reeves had hit his daughter with a belt. She had never seen Reeves with a gun, nor had he ever pulled a knife on her.

Exh. 7 at 2-7.

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the 'contrary to' clause, a federal habeas court may grant the writ if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if a state court identifies the

6

correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. As summarized by the Ninth Circuit: "A state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) *overruled on other grounds*; *Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003) (citing *Williams*, 529 U.S. at 405-07).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must not only be erroneous, but objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law). In deciding whether a state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of the Petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Where the state court gives no reasoned explanation of its decision on a Petitioner's federal claim and there is no reasoned lower court decision on the claim, a federal habeas court should conduct an independent review of the record. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

The only definitive source of clearly established federal law under

7

1    28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the

2    state court decision.  *Williams* 529 U.S. at 412; *Clark v. Murphy*, 331 F.3d 1062,

3    1069 (9th Cir. 2003).  While the circuit law may be "persuasive authority" for the

4    purposes of determining whether a state court decision is an unreasonable

5    application of Supreme Court precedent, only the Supreme Court's holdings are

6    binding on the state courts and only those holdings need be "reasonably" applied.

7    *Id*.

## DISCUSSION

### A.    Ineffective Assistance of Counsel

10    Petitioner claims he was denied his right to effective assistance of counsel

11    in violation of the Sixth Amendment.  Petitioner asserts he received ineffective

12    assistance of trial counsel when: (1) during the sentencing hearing, counsel failed

13    to tell the trial court that the imposition of a sentence for an ex-felon was based

14    upon Petitioner's own testimony that he possessed the firearm for approximately a

15    year before the shooting; (2) counsel failed to request a "momentary possession"

16    jury instruction; (3) counsel failed to argue the unconstitutionality of California

17    Penal Code section 12021; and (4) during the sentencing hearing, counsel failed to

18    argue that Petitioner only momentarily possessed the firearm during a period of

19    self-defense.

#### 1.  Legal Standard

21    A claim of ineffective assistance of counsel is cognizable as a claim of

22    denial of the Sixth Amendment right to counsel, which guarantees not only

23    assistance, but effective assistance of counsel.  *Strickland v. Washington*, 466 U.S.

24    668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be

25    whether counsel's conduct so undermined the proper functioning of the adversarial

26    process that the trial cannot be relied upon as having produced a just result.  *Id.*   In

8

order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must satisfy a two-prong test.

First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. The relevant inquiry into whether counsel's performance fell below an objective standard of reasonable is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689.

Second, Petitioner must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence and reliability in the outcome. *Id.* Where the defendant is challenging his conviction, the appropriate question is "'whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Luna v. Cambra*, 306 F.3d 954, 961 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 695).

The Supreme Court has not decided what standard should apply to counsel's performance in non-capital sentencing proceedings. *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1244 (9th Cir.), *cert. denied*, 546 U.S. 944 (2005). *Strickland* declined to "consider the role of counsel in an ordinary sentencing, which . . . may require a different approach to the definition of constitutionally effective assistance," and no later Supreme Court decision has done so, either. *Id.* (quoting

9

*Strickland*, 466 U.S. at 686).  Consequently, there is no clearly established Supreme Court precedent governing ineffective assistance of counsel claims in the noncapital sentencing context.  *See Davis v. Grigas*, 443 F.3d 1155, 1158-59 (9th Cir. 2006); *Cooper-Smith*, 397 F.3d at 1244-45.

### 2.  Analysis

#### a.     Right Against Self-Incrimination

Petitioner claims he was deprived of effective assistance of counsel because defense counsel failed to inform the trial court at the sentencing hearing that imposing a sentence for being a convicted felon in possession of a firearm was based on Petitioner's own testimony that he was in possession of a firearm for nearly a year before the shooting.  Third Amend. Pet. at 9. Petitioner's argues that such a failure resulted in constitutionally deficient performance on the part of defense counsel and a violation of his Fifth Amendment right against self-incrimination, of which he contends he was not informed.  *Id.*

In *Powers v. Washington*, the defendant argued that the admission of his testimony violated his constitutional right under the Fifth Amendment, which protects him against self-incrimination.  223 U.S. 303, 313 (1912).   The defendant voluntarily took the stand and testified on his own behalf during a preliminary hearing, without the presence of counsel.  *Id.*  The Court explained that "it is not essential to the admissibility of his testimony that he should have first been warned that what he said might be used against him."  *Id.*   The Court held "if the confession was voluntary, it is sufficient though it appear that he was not so warned" that what he said could be used against him.  *Id.* (citing *Wilson v. United States*, 162 U.S. 613, 623 (1896)).  *Accord Rhode Island v. Innis*, 446 U.S. 291, 297-304 (1980) (voluntary statements by a defendant do not implicate the Fifth Amendment protection against self- incrimination requiring warnings pursuant to

10

1   *Miranda v. Arizona*, 384 U.S. 436 (1966)).

2          Although there is no record of the trial court advising Petitioner of his right

3   against self-incrimination, it had no duty to do so if Petitioner's testimony was

4   voluntary.  *See Powers*, 223 U.S. at 313.  There is no evidence in the record that

5   Petitioner was coerced into testifying.  In fact, during cross-examination, the

6   prosecutor elicited that Petitioner was advised of his rights under *Miranda v.*

7   *Arizona*, 384 U.S. 436 (1966), by the police.  *See* Reporter's Transcript ("RT") at

8   488-89, Respondent's Exhibit 2.  *Miranda* requires that a person subjected to

9   custodial interrogation be advised that he has the right to remain silent, that

10   statements made can be used against him, that he has the right to counsel, and that

11   he has the right to have counsel appointed.

12          Also, the trial record reflects that Petitioner's testimony was not the only

13   evidence of his possession of a weapon.  During the trial, Petitioner was also

14   convicted of assault with a firearm based on the testimony of the victim Reeves,

15   who testified that Petitioner pulled a gun and shot him in the leg during the

16   dispute.  Therefore, it was not Petitioner's testimony alone that resulted in his

17   conviction.  Counsel cannot be faulted for failing to raise such an argument at

18   sentencing, where there was ample other evidence of Petitioner's gun possession

19   that resulted in his conviction.

20          The Supreme Court has not provided a standard that should apply to

21   defense counsel's performance in non-capital sentencing proceedings.  Therefore,

22   it cannot be said that counsel's performance at sentence was contrary to

23   established Supreme Court precedent.  *See Davis v. Grigas*, 443 F.3d 1155, 1158-

24   59 (9th Cir. 2006); *Cooper-Smith*, 397 F.3d at 1244-45. However, under the

25   standard for ineffective assistance of trial counsel set forth in *Strickland v.*

26   *Washington*. 466 U.S. 668 (1984), it cannot be argued that defense counsel's

27

28                                              11

performance fell below an "objective standard of reasonableness." *Id.* at 687-88.
Defense counsel acted reasonably given that the suggested argument had no
purpose of legal impact.  Also, under the second prong of *Strickland,* Petitioner
cannot demonstrate he was prejudiced by counsel's performance because there was
substantial evidence of his possession of the weapon other than Petitioner's own
testimony.  *Id.*  It cannot be shown with a reasonable probability that the result of
the proceedings would have been any different, because the suggested argument
would not have resulted in a different outcome at sentence.

The state court's rejection of Petitioner's ineffective assistance of counsel
claim was not contrary to, or an unreasonable application of, *Strickland*.  See 28
USC § 2254(d).  Petitioner is not entitled to federal habeas relief on this claim.

### b.    Momentary Possession Jury Instruction

Petitioner claims he was also deprived of effective assistance of counsel
because defense counsel failed to request a momentary possession jury instruction.
Third Amend. Pet. at 9.  Petitioner argues that the evidence pointed to him only
momentarily possessing the gun in self-defense, and that the period for which it
was under Petitioner's control is irrelevant.  Third. Amend. Pet. at 9.

California courts have repeatedly interpreted momentary possession to
mean possession for no greater period of time than necessary to dispose of the
weapon or act in self-defense.  In *People v. King*, 22 Cal. 3d 12, 24 (1978), the
California Supreme Court explained self-defense to only encompass when a felon
is or reasonably believes himself or others to be in imminent peril, "and without
preconceived design on his part a firearm is made available to him," and "his
temporary possession of that weapon for a period no longer than that in which the
necessity or apparent necessity to use it in self-defense continues."  In *People v.
Hurtado*, the California Court of Appeal describe "momentary possession" for

12

purposes of disposal as follows:

> [W]e conclude that, under *Mijares* and *Sullivan*, defendant was not entitled to the instruction on the possession charge because, as a matter of law, defendant's possession of the firearm cannot be characterized as momentary. Defendant maintained control over the gun for at least two days, during which time he loaded the weapon and was free to use it in any way he saw fit. Defendant's conduct in continuing to maintain dominion and control over the weapon for days vitiated any initial entitlement to a temporary possession for disposal defense to the felon in possession of a firearm charge.

*Id.* at 814; *see People v. Mijares*, 6 Cal. 3d 415, 418-23 (1971) ("To 'possess' means to have actual control, care and management of, and not a passing control, fleeting and shadowy in its nature"); *see also People v. Sullivan*, 215 Cal. App. 3d 1446, 1453 (1989) (holding instruction on momentary possession of narcotics not warranted where defendant took narcotics from a shed to his car and drove a quarter mile where he was stopped by the police, which showed his possession was extended rather than momentary).

CALCRIM 2514 defines the defense of momentary possession of a firearm by a felon for self-defense as follows:

> The defendant is not guilty of unlawful possession of a firearm if (he/she) temporarily possessed the firearm in (self-defense/ [or] defense of another). The defendant possessed the firearm in lawful (self-defense/ [or] defense of another) if:
> 1. The defendant reasonably believed that (he/she/someone else/<insert name of third party> ) was in imminent danger of suffering significant or substantial physical injury;
> 2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger;
> 3. A firearm became available to the defendant without planning or preparation on (his/her) part;
> 4. The defendant possessed the firearm temporarily, that is, for a period no longer than was necessary [or reasonably appeared to have been necessary] for self-defense;
> 5. No other means of avoiding the danger of injury was available; AND
> 6. The defendant's use of the firearm was reasonable under the circumstances.

Similarly CALJIC 12.50 requires:

> 1. [He] [She] as a reasonable person had grounds for believing and

did believe that [he] [she] was [or] [others were] in imminent peril of great bodily harm; and

2. Without preconceived design on [his] [her] part, a firearm was made available to [him] [her];

3. [His] [Her] possession of such firearm was temporary and for a period of time no longer than that in which the necessity or apparent necessity to use it in self-defense continued; and

4. The use of the firearm was reasonable under the circumstances and was resorted to only if no alternative means of avoiding the danger were available.

Petitioner testified to continuously possessing the loaded gun for approximately one year prior to the incident here with knowledge that the law prohibited his possession. RT 487. Additionally, Petitioner intentionally retrieved the loaded gun from his attic before going outside of his home to confront the victim. RT 482-87. Therefore, Petitioner was not entitled to the momentary possession jury instruction because he could not meet the necessary elements for this defense: 1) the firearm was made not available without preconceived design on his part, and 2) possession of the firearm was not temporary and for a period longer than was necessary for self- defense. Petitioner's argument that counsel should have requested an additional instruction on momentary possession fails because such a request would have been futile given California courts' history.

Perhaps more importantly, the record reflects that defense counsel did in fact request CALJIC 12.50, which incorporated the concept of temporary possession for purposes of self- defense as a defense to the section 12021 charge. RT 542. The court denied the request because "[t]he factual situations of this particular case do not fit that particular instruction . . . ." *Id.* Consequently, Petitioner's claim of ineffective assistance of counsel for failing to request a momentary possession jury instruction is contrary to the record.

Under *Strickland*, it cannot be argued that defense counsel's performance fell below an "objective standard of reasonableness." 466 U.S. at 687-88. Defense counsel requested the momentary possession jury instruction. Given that

14

the court denied the initial request, it was reasonable for counsel to not make further requests for such an instruction. Also, under the second prong of *Strickland,* Petitioner cannot demonstrate that he was prejudiced by counsel's performance. 466 U.S. at 687-88. It is unlikely that another request for the momentary possession jury instruction would have been granted considering the court's ruling in response to the first request. Furthermore, had the court granted the instruction, it cannot be shown with reasonable probability that the jury would have found the instruction applicable and acquitted the petitioner under the facts of this case.

The state court's rejection of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, *Strickland*. See 28 USC § 2254(d). Petitioner is not entitled to federal habeas relief on this claim.

### c.   Constitutionality of California Penal Code section 12021

Petitioner claims he was denied effective assistance of counsel because counsel failed to argue against the constitutionality of California Penal Code section 12021. Third Amend. Pet. 10. Petitioner argues that section 12021 is unconstitutional on its face because it prohibits a felon from possessing a firearm "under any circumstances." *Id.*

California courts have consistently rejected constitutional challenges to section 12021. *See, e.g., People v. King*, 22 Cal. 3d 12, 21-23 (1978) (discussing history of statute and citing cases affirming constitutionality); *People v. Mills*, 6 Cal. App. 4th 1278, 1283-91 (1992); *People v. Howard*, 63 Cal. App. 3d 249, 256-57 (1976); *People v. Dubose*, 42 Cal. App. 3d 849-50 (1974); *People v. Garcia*, 97 Cal. App. 2d 733, 734 (1950); *People v. Camperlingo*, 69 Cal. App. 466, 470-74 (1924). The state court's rejection of Petitioner's claim implicitly based on these decisions did not involve an unreasonable application of Supreme Court precedent given that the United States Supreme Court has similarly rejected constitutional

15

challenges to the federal statute criminalizing felons possessing firearms. *Lewis v. United States*, 445 U.S. 55, 65-68 (1980) (upholding federal statute, rejecting Equal Protection challenge); *see also id.* at 65, n. 8 (rejecting Second Amendment claim); *see also United States v. Sherbondy*, 685 F.2d 996, 1003 (9th Cir. 1988) (rejecting Equal Protection challenge to federal statute); *United States v. Indelicato*, 800 F.2d 1482, 1483-84 (9th Cir. 1986) (upholding validity of federal felon in possession statute).

Finally, Petitioner's argument is flawed because section 12021 does not prohibit possessing a firearm by a felon "under any circumstances." The section has been interpreted as permitting a felon to momentarily possess a firearm for self-defense. CALCRIM 2514, CALJIC 12.50, *People v. King*, 22 Cal. 3d at 15, 24-27; *People v. Pepper*, 41 Cal. App. 4th 1029, 1034-35 (1996).

Under *Strickland*, it cannot be said that defense counsel's performance fell below an "objective standard of reasonableness." 466 U.S. at 687-88. Such a challenge would have been without merit under both state and federal law. Also, under the second prong of *Strickland,* Petitioner cannot demonstrate that he was prejudiced by counsel's performance. 466 U.S. at 687-88. It is unlikely that the constitutional challenge would have resulted in a more favorable sentence, given that the constitutionality of similar statutes prohibiting gun possession by prior felons has been upheld by the Supreme Court.

The state court's rejection of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, *Strickland*. See 28 USC § 2254(d). Petitioner is not entitled to federal habeas relief on this claim.

### d.    Momentary Possession Argument

Finally, Petitioner claims he was denied effective assistance of counsel because counsel failed to argue during re-sentencing that Petitioner only momentarily possessed the gun, it was used in self-defense and that Petitioner had

16

1    not used the gun at any time before the shooting.  Third Amend. Pet. at 10.

2         For the same reasons that defense counsel was without legal basis when

3    arguing for a momentary possession jury instruction at trial, counsel could not raise

4    such a defense at re-sentencing because Petitioner admitted to possessing the gun

5    for almost a year prior to the shooting.  RT 487.  The gun did not become available

6    to petitioner "without preconceived design" or "without planning or preparation on

7    his part" and his temporary possession of that weapon was not "for a period no long

8    that which the necessity or apparent necessity to use it in self-defense continues."

9    *People v. King*, 22 Cal. 3d at 24; CALCRIM 2514.  Moreover, Petitioner appeared

10   before the same judge at the re-sentencing who had presided over his trial.  This

11   judge had already denied the momentary possession instruction and had been privy

12   to the facts elicited at trial.

13        Under *Strickland*, it cannot be argued that defense counsel's performance at

14   the re-sentencing fell below an "objective standard of reasonableness."  466 U.S. at

15   687-88.  Although defense counsel requested the momentary possession jury

16   instruction at trial, given that the court found the instruction legally inapplicable, it

17   was reasonable for counsel to not raise it again at the re-sentencing.  Also, under

18   the second prong of *Strickland,* Petitioner cannot demonstrate that he was

19   prejudiced by counsel's performance.  466 U.S. at 687-88.  Petitioner has not

20   established a reasonable probability that a more favorable sentence would have

21   been given had counsel advanced the momentary possession argument or argued

22   the other facts about the trial before the same judge at re-sentencing.

23        The state court's rejection of Petitioner's ineffective assistance of counsel

24   claim was not contrary to, or an unreasonable application of, *Strickland*.  See 28

25   USC § 2254(d).  Petitioner is not entitled to federal habeas relief on this claim.

26                          **CONCLUSION**

27        The state court's denial of Petitioner's habeas petition is not contrary to or

28                                 17

an unreasonable application of established federal law determined by the Supreme

Court.  Therefore, Petitioner's petition for writ of habeas corpus must be DENIED.

       IT IS SO ORDERED.

DATED: March 28, 2008

_____
JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


YOUNG,

               Plaintiff,

  v.

RUNNELS et al,

               Defendant.

_____/

Case Number: CV05-00119 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 28, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Gregory Young
T11420
P.O. Box 950
Folsom, CA 95763

Dated: March 28, 2008

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk